IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JUAN RAMON ALVARADO
IZARRARAZ,
A-240-173-606,

        Petitioner,

    v.

WARDEN OF THE GOLDEN STATE
ANNEX DETENTION FACILITY, et. al.,

        Respondents.

No.  1:25-cv-01774-DJC-DMC (HC)

FINDINGS AND RECOMMENDATIONS

Petitioner, an immigration detainee proceeding, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2241. Respondents filed an opposition, ECF No. 14, and Petitioner filed a reply, ECF No. 15.

**I. BACKGROUND**

A.    **Petition for Writ of Habeas Corpus**

Petitioner contends he has "been in the U.S. for 25 years," and claims his re-detention on June 6, 2025, violates his due process rights because, following his re-arrest, he has been detained longer than six months. See ECF No. 1. According to Petitioner, due to his detention, his daughter was taken into foster care but he is unable to contact her. See id. at 8.

1

Petitioner contends his son is a U.S. citizen and, due to Petitioner's detention, is "challenged with: trying to keep tabs on [Petitioner's] daughter and her whereabouts, trying to help [Petitioner] as best he can, and working a full time job." Id.

Petitioner asserts that he was convicted of driving under the influence in 2023. See id. at 7. Petitioner contends that prior to his re-detention, Petitioner attended AA classes, went to church regularly, and was working as a general contractor and agriculture laborer. See id. at 8. At the time of filing the petition, Petitioner did "not know the status of [Petitioner's] Immigration case." Id. at 7. Petitioner asserts that he seeks release to "spend my time with my kids and looking after them to make sure they have everything they need to have a bright and successful future." Id. Petitioner states that, if he were released he would "comply with all the rules and regulations in an electronic monitoring program and make it to every appointment that is given to me by my Officer. I will take any kind of electronic monitoring program as long as it means I can be with my family again." Id. at 8.

Petitioner argues that detention beyond six months, without a bond hearing is unconstitutional. See id. at 11 (citing Demore v. Kim, 538 U.S. 510, 529-530 (2003). Next, petitioner contends that even if the Court does not find a bight-line six month standard, "an individualized bond hearing is required when detention becomes unreasonably prolonged." Id. at 12.  According to Petitioner, "the Mathews factors establish that Petitioner is entitled to an evidentiary hearing before a neutral adjudicator." Id. at 15 (citing Mathews v. Eldridge, 424 U.S. 319 (1976)). Petitioner argues that at such hearing, "due process requires certain minimum protections to ensure that a noncitizen's detention is warranted," and therefore, the government should "bear the burden of proof by clear and convincing evidence that the noncitizen is a danger or flight risk." Id. at 16-17. Finally, Petitioner asserts that "due process also requires consideration of alternatives to detention." Id. at 18.

### B.     Response to Petition

Respondents contend that "Petitioner is a native and citizen of Mexico who entered the country without inspection at an unknown time and unknown location." ECF No. 14, pg. 1. Respondents assert that Petitioner was initially "arrested by the Department of Homeland

2

Security ("DHS") on July 24, 2024, and charged with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i)after serving a sentence for driving under the influence of liquor." Id. According to Respondents, and supported by the documents provided by Respondents, Petitioner was released from DH custody on September 16, 2024, "during his removal proceedings under a bond of $5,000." Id. Respondents contend that Petitioner was re-arrested "by DHS on June 6, 2025, after his arrest for a second driving under the influence of liquor offense." Id. at 2 (citing Respondents' Exhibit 4).

Respondents argue that Petitioner is an applicant for admission, pursuant to 8 U.S.C. § 1225(a), and therefore "subject to mandatory detention by Immigration and Customs Enforcement under 8 U.S.C. § 1225(b)(2) during the pendency of his removal proceedings." Id. Respondents assert that injunctive relief for petitioners detained under § 1225(b)(2) has been denied by "several district courts within the Ninth Circuit," and Respondents cite four cases in support. Id. Respondents additionally contend that, pursuant to In re Matter of Yajure Hurtado, "'Immigration Judges lack authority to hear bond requests or to grant bond to aliens, like the respondent, who are present in the United States without admission.'" Id. (quoting In re Matter of Yajure Hurtado, 29 I & N Dec. 216 (BIA 2025)). However, Respondents "acknowledges that the vast weight of authority on the proper interpretation of 8 U.S.C. § 1225(b)(2) is not in its favor." Id. at 3.

Attached to Respondents' answer are: Petitioner's July 24, 2024, "record of Deportable/Inadmissible Alien" document, ECF No. 14-1, pgs. 2-5, Petitioner's September 16, 2024, "ORDER OF THE IMMIGRATION JUDGE," documenting Petitioner's release from custody, id. at 7-8, Petitioner's June 6, 2025, "Record of Deportable/Inadmissible Alien" document, id. at 10-12, and Petitioner's August 19, 2025, "ORDER OF THE IMMIGRATION JUDGE," documenting Petitioner's change in custody denial, id. at 14-15.

### C.    Petitioner's Reply

In Petitioner's Reply, Petitioner provides similar background information as provided by Respondents, specifically Petitioner's nationality, that he was arrested by DHS on July 24, 2024, released from DHS custody on September 16, 2024, and re-arrested by DHS on

June 6, 2025. ECF No. 15, pg. 1. Petitioner argues his detention is unlawful because Petitioner has been detained longer than six months. See id. at 2. Further, Petitioner alleges that, because he was previously detained in 2024, "the post order detention period is cumulative," and as of February 18, 2026, Petitioner had been detained for almost nineteen months." Id. at 3. Petitioner requests immediate release "under appropriate conditions of supervision set forth in 8 C.F.R. §241.5," that Respondents be enjoined from Removing Petitioner to a third-country, and procedural safeguards should Respondents seek to remove Petitioner to a third-country.[1] Id. at 4.

## II. DISCUSSION

The undersigned finds that Petitioner has a protectable liberty interest in remaining out of custody and he was deprived of this liberty without due process when re-detained without notice or a hearing.  Accordingly, the undersigned will recommend granting Petitioner's petition for writ of habeas corpus as to Petitioner's due process claims and order that Respondents provide Petitioner a bond hearing before an immigration judge, in accordance with specific procedural safeguards.

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. Hernandez v. Session, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. Id. at 693–94.

/ / /

/ / /

---

[1] the Court notes that in two places, Petitioner's reply refers to different individuals, "Because Mr. Cabrera Alfonso is removal for violations of criminal law . . .," ECF No. 15, pg. 2, and "In Ground Four of his petition, Mr. Pek challenges . . .," id. at 4, n. 1. It appears to the Court that the reference to third-country removal was not intended for this reply as Petitioner never raised a third-country removal claim in the original petition. Given it was not raised in the original petition, the undersigned declines to address this requested relief.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). The Court considers each step in turn.

### 1.    Liberty Interest

As for the first step, the Court finds Petitioner has shown he has a protectable liberty interest. See Morrissey, 408 U.S. at 482. "Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." Id. (quoting Morrissey, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody." Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." R.D.T.M. v. Wofford, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

As to whether there exists a protected liberty interest, the Court finds Petitioner has a liberty interest as he was released from immigration detention, which created a reasonable expectation that he would be entitled to retain his liberty absent a material change in

circumstances and in accordance with due process. Petitioner's re-detention goes against United States Supreme Court precedent which recognizes that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued release. See Morrissey, 408 U.S. 471 at 482. Given this, the Court finds Petitioner has established his liberty interest in his continued release.

2.    Procedural Due Process

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. To determine such, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were violated.

First, Petitioner has a substantial private interest in remaining free from detention. As discussed previously, Petitioner has lived outside of custody for almost nine months. Petitioner created a life while outside of detention including having children who are U.S. citizens and for whom Petitioner is responsible. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. See Manzanarez v. Bondi, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly); see also Colina-Meira v. Lyons, No. 1:25-cv-1716 CSK P, 2025 LX 673205 (E.D. Cal. Dec. 31, 2025).

Second, the risk of erroneous deprivation is considerable given Petitioner was not provided a pre-deprivation hearing where Petitioner was found to be a flight risk or danger to the community. "[T]he risk of erroneous deprivation is high when, as here, parole is revoked without written notice or reason." Chavarria, 2025 WL 3533606, at *3. Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause

6

only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Thus, Court finds there is a serious likelihood Petitioner will be erroneously deprived of his liberty interest. Moreover, without any procedural safeguards to determine whether his re-detention was justifiable, the probative value of additional procedural safeguards is high. R.D.T.M., 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. See Garcia v. Andrews, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). While the government has an interest in enforcing immigration laws, Respondents' interest in detaining Petitioner without notice or a hearing here is low. See Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). Detention hearings in immigration courts are routine and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. Even if Respondents believed they had a proper reason to detain Petitioner, such decision on their part would warrant written notice and a pre-detention hearing rather than automatic detention. See E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process").

On balance, the Court finds the Matthews factors weigh in favor of finding Petitioner is entitled to notice and a bond hearing, and Petitioner should have been provided such notice and a hearing before he was re-detained. The Due Process Clause requires that, at a minimum, "that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a pre-deprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of

7

immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents identify no reason why written notice was not provided or why a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).

Thus, the undersigned finds Petitioner is entitled to relief as to his due process claims and will recommend granting Petitioner's petition for writ of habeas corpus.

### B. Scope of Relief

Respondents contend that, on June 3, 2025, Petitioner "was arrested in Napa County for violating California (CA) VC 23152(A) DUI W/ PRIOR CONV." ECF No. 14-1, pg. 11. The Court confirmed this in Napa County Court records, [2] which show Petitioner was charged on June 3, 2025, and on June 6, 2025, Petitioner was released on his own recognizance by the state court, following his arraignment where Petitioner pled not guilty. While in detention, on August 19, 2025, an immigration judge conducted a custody redetermination, as requested by Petitioner. See ECF No. 14-1, pg. 14. The immigration judge denied the request citing "DANGER. ONE DUI CONVICTION 2024, GRANTED BOND BY AN IJ, NOW HAS ACCRUED A NEW DUI ARREST." Id.

The Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990) (emphasis in original). Respondents make no claim that Petitioner's June 3, 2025, charge constituted a change in circumstances nor that Petitioner's post-deprivation bond hearing on August 19, 2025, satisfies due process. The undersigned further acknowledges that Petitioner's immigration detention has prevented him from proceeding with the adjudication of his second arrest, as the state court records show Petitioner failed to appear for the preliminary hearing and subsequent hearings.

/ / /

---

[2] The Court may take judicial notice pursuant to Federal Rule of Evidence 201 of matters of public record. See U.S. v. 14.02 Acres of Land, 530 F.3d 883, 894 (9th Cir. 2008). Thus, this Court may take judicial notice of state court records, see Kasey v. Molybdenum Corp. of America, 336 F.2d 560, 563 (9th Cir. 1964).

However, this Court has recognized that in certain circumstances, a prompt post-deprivation hearing may be sufficient to satisfy due process. See Calvillo v. Chestnut, No. 1:26-cv-00569-DC-CSK (HC), 2026 LX 36471, at *5 (E.D. Cal. Jan. 30, 2026) (finding a post-deprivation bond hearing is the proper remedy because "Respondents have viably alleged that Petitioner's re-detention was precipitated by a changed circumstance arguably indicating that Petitioner is a threat to public safety"); Martinez Hernandez v. Andrews, No. 1:25-cv-01035-JLT-HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025) (finding that where government's asserted justifications for noncitizen's re-detention "are not obviously pretextual" and "there is a dispute of fact as to whether Petitioner repeatedly violated the terms of his parole" the proper remedy is "prompt, post-deprivation process" rather than immediate release); O.A.C.S. v. Wofford, No. 1:25-cv-01652-DAD-CSK, 2025 WL 3485221, at *5 (E.D. Cal. Dec. 4, 2025) (finding that the petitioner's dispute as to whether he violated the terms of his supervised release "does not demonstrate that his detention was pretextual," and therefore he "is not entitled to immediate release but is entitled to an in-custody bond hearing.").

Here, Petitioner was provided a post-deprivation bond hearing on August 19, 2025, seventy-five (75) days after Petitioner was detained. The undersigned does not find that such post-deprivation hearing was prompt. Further, Petitioner has not been provided a bond hearing since August 19, 2025, and has therefore been in custody for over two hundred (200) days without any subsequent hearings. Thus, the undersigned finds the proper remedy is that Petitioner receive a post-deprivation bond hearing in which Respondents must show, by clear and convincing evidence, that the alleged changed circumstances demonstrate that Petitioner is either a flight risk or threat to public safety, such that his detention is justified, and will recommend such remedy.

///

///

///

///

///

9

## III. CONCLUSION

Based on the foregoing, the undersigned recommends:

1.  It is RECOMMENDED that Petitioner's petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2.  It is RECOMMENDED that Respondents be ORDERED to provide Petitioner a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its implementing regulations, in which Respondents must show, by clear and convincing evidence, that the alleged changed circumstances demonstrate that Petitioner is either a flight risk or threat to public safety, such that his detention is justified within seven (7) days of the date of entry of this order;

3.  It is RECOMMENDED that within three days of the bond hearing, Respondents shall file a status report in this case confirming that Petitioner has been provided the bond hearing;

4.  It is RECOMMENDED that if Respondents fail to provide Petitioner a bond hearing within seven days, Petitioner shall be immediately released from Respondents' custody on the same terms as his 2024 parole; and

5.  It is RECOMMENDED that if the government seeks to re-detain Petitioner following his release, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond must be considered.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Thus, within 7 days after being served with these findings and

recommendations, any party may file written objections with the Court.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 27, 2026

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

11